Dear Director Duffy,
¶ 0 This office has received your letter asking for an official Opinion, addressing, in effect, the following questions:
 1. Does Section 4 of Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57, mandate salary increases for employees of the Oklahoma Department of Wildlife Conservation?
 2. If so, does Section 4 of Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57, impermissibly restrict the powers and duties granted to the Director of the Department of Wildlife Conservation and the Oklahoma Wildlife Conservation Commission by Article XXVI of the Oklahoma Constitution?
 I.
¶ 1 The enactment you inquire about, Enrolled Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57 at Section 4, provides as follows:
 Effective July 1, 1996, all full-time and part-time officers and employees of the state shall be awarded an annualized salary increase of One Thousand Two Hundred Dollars ($1,200.00) per year above the salary amount in effect on June 30, 1996. . . . Provided, the following officers and employees shall be ineligible for a pay increase pursuant to this section and nothing, except as otherwise provided by Section 74 O.S. 840-2.17 of Title 74 of the Oklahoma Statutes, shall be construed to authorize any increase or advancement of the salaries of:
 1. Any elected official prohibited from receiving a salary increase pursuant to Section 10, Article 23 of the Oklahoma Constitution;
 2. Persons employed pursuant to Section 1806.1 of Title 74 of the Oklahoma Statutes [seasonal employees];
 3. Persons employed pursuant to Section 1.6a of Title 53 of the Oklahoma Statutes [specific Historical Society employees];
 4. Persons on temporary, student, internship or other limited term appointments;
 5. Officers and employees of institutions under the administrative authority of the State Regents for Higher Education;
 6. Persons who, on July 1, 1996, are serving in an initial probationary appointment to the classified service and unclassified employees in regular status who have not completed an initial six (6) months of service; provided, if such persons complete the initial probationary appointment or initial six (6) months of service after July 1, 1996, such persons shall be awarded the annualized salary increase pursuant to this section upon such completion; or
 7. Persons employed pursuant to paragraph 12 of Section 74 O.S. 840-5.5 of Title 74 of the Oklahoma Statutes [specific Tourism Department employees].
1996 Okla. Sess. Laws ch. 57, 4 (emphasis added and bracketed material added).
¶ 2 The language of the statute makes it clear that the mandatory salary increase is for "all full-time and part-time officers and employees of the state," unless they are included in the list of exceptions to that requirement. None of the seven exceptions specifically exempt employees of the Oklahoma Department of Wildlife Conservation. Accordingly, we conclude that it was the intent of the Legislature, in enacting Section 4 of Senate Bill 1128 of the second regular session of the 45th Legislature, that the mandatory salary increases apply to employees of the Oklahoma Department of Wildlife Conservation.
 II.
¶ 3 Having concluded that the mandatory salary increases required in Section 4 of Senate Bill 1128 apply generally to employees of the Oklahoma Department of Wildlife Conservation, we next determine whether the Legislature in requiring salary increases for employees of the Department of Wildlife Conservation impermissibly interfered with powers conferred on the Director of the Department of Wildlife Conservation and the Oklahoma Wildlife Conservation Commission.
¶ 4 The people of this State, in adopting Article XXVI of the Oklahoma Constitution, created a constitutional entity, the Department of Wildlife Conservation of the State of Oklahoma, as well as the Oklahoma Wildlife Conservation Commission. Under Article XXVI, Section 1 of the Oklahoma Constitution, the people vested the Director of the Department with the power to govern
the Department under rules and regulations and policies prescribed by the Commission:
 There is hereby created a Department of Wildlife Conservation of the State of Oklahoma and an Oklahoma Wildlife Conservation Commission. The Department of Wildlife Conservation shall be governed by the Wildlife Conservation Director, hereinafter created, under such rules, regulations and policies as may be prescribed from time to time by the Oklahoma Wildlife Conservation Commission. Such rules and regulations and amendments thereof shall be filed and recorded in the office of the Secretary of State, and shall become effective on the tenth (10th) day following such filing.
Okla. Const. Article XXVI, Section 1 (emphasis added).
¶ 5 The Director, who is vested with the power to govern the Department of Wildlife Conservation is appointed by the Wildlife Conservation Commission under the provisions of Article XXVI, Section 3 of the Oklahoma Constitution, which provides:
 A Director of Wildlife Conservation shall be appointed by a majority vote of the entire Commission, who shall be removed only for cause and after public hearing by the Commission. His duties and compensation for his services shall be fixed by a majority vote of the entire Commission.
 The Director shall, with the approval of the Commission, appoint such assistants and employees as the Commission may deem necessary.
 The Commission shall determine the qualifications of the Director, all assistants and employees. No Commissioner shall be eligible for employment as Director or otherwise.
Okla. Const. Article XXVI, Section 3 (emphasis added).
¶ 6 In examining and interpreting the provisions of Article XXVI, Section 3 in Attorney General Opinion No. 71-239, the Attorney General concluded that because under the Constitution it was the Commission that determined the qualifications of the Department's Director and all of the Department's assistants and employees, the Legislature could not by statute apply the provisions of the Oklahoma Merit System to the Department of Wildlife Conservation. In reaching this conclusion, the Attorney General found that the "determination of personnel standards concerning the Department of Wildlife Conservation is delegated directly to the Wildlife Conservation Commission by the Oklahoma Constitution," and that the Legislature could not abridge that power. A.G. Opin. 71-239 at 194.
¶ 7 Similarly, in Attorney General Opinion 76-277, the Attorney General concluded that legislation establishing a specific number of full-time-equivalent employees that the Department of Wildlife Conservation could have, was not binding upon the Department, because the statute conflicted with the provisions or Article XXVI, Section 3 which empowered the Director, upon approval of the Commission, to appoint assistants and employees "as the Commission may deem necessary." In that same Opinion, the Attorney General opined that the legislative attempt to set a ceiling on the amount of funds that the Department and Commission could appropriate for salaries, also unconstitutionally encroached upon the powers granted to the Director and the Commission in Article XXVI.
¶ 8 In the following year, in concluding that the Legislature could impose leave regulations upon the employees of the Oklahoma Department of Wildlife Conservation, the Attorney General, in Opinion 77-254, construed the provisions of Article XXVI, Section 3 to withhold from legislative authority the right to determine the "number and qualifications of assistants and employees of the Department of Wildlife Conservation." The Attorney General then reasoned that because leave regulations are outside of the area of the number and qualifications of assistants and employees, the Constitution did not prohibit the Legislature from imposing leave requirements on the Department of Wildlife Conservation. This construction was, however, in part overruled a few months later when the Attorney General issued Opinion 77-310.
¶ 9 In Attorney General Opinion 77-310, the Attorney General held that the mandatory salary increase provisions of 74 O.S.828.2 (1977), could not constitutionally be applied to the Department of Wildlife Conservation. The mandatory salary increase statute provided:
 All state agencies who employ people in the exempt and unclassified service of the state, whose salaries are not prescribed by law, shall grant such employees salary increase on the same basis as prescribed in this act for personnel under the Merit System of Personnel Administration.
74 O.S. 828.2 (1977) (emphasis added).
¶ 10 In concluding that the statute could not be imposed upon the Department of Wildlife Conservation, the Attorney General held that there was a "direct correlation between the amount of funds available for salaries and the number of employees an agency can retain." A.G. Opin. 77-310 at 349. Because of this correlation, the Attorney General concluded that Section 828.2 encroached upon the constitutionally granted authority of the Commission:
 Therefore, in the instant situation, an attempt to enforce the provisions of 74 O.S. Supp. 1977, 828.2
would be an attempt to control the amount of money which the Wildlife Commission may expend for salaries and such is an indirect but nonetheless a distinct encroachment upon the constitutionally granted authority of the Commission to determine the number of employees it wishes to retain.
Id. at 349 (emphasis added).
¶ 11 Under the rationale of the above quoted Attorney General Opinions, the legislative statutory establishment of mandatory salary increases for employees of the Oklahoma Department of Wildlife Conservation infringes upon the right of the Commission under Article XXVI, Section 3 of the Oklahoma Constitution. The imposition of such mandatory salary increases also impermissibly encroaches upon the power of the Director to govern the Department under Article XXVI, Section 1.
¶ 12 As noted above, Section 1 of Article XXVI provides that the "Department of Wildlife Conservation shall be governed by the Wildlife Conservation Director." In Board of Regents ofUniversity of Oklahoma v. Baker, 638 P.2d 464 (Okla. 1981), the Supreme Court held that constitutional provisions such as Article XXVI, Section 1 which vest a constitutionally created entity with governmental power, vest the constitutional body with the power to determine the salary schedules and compensation to be paid employees. In Baker, the Court construed the provisions of Article XIII, Section 8 of the Constitution which established the Board of Regents for the University of Oklahoma and which also vested the Board with the power of the government of the University:
 The government of the University of Oklahoma shall be vested in a Board of Regents consisting of seven members to be appointed by the Governor by and with the advice and consent of the Senate.
Okla. Const. Article XIII, Section 8 (emphasis added).
¶ 13 The Baker Court held that, in elevating the status of the Board of Regents "from a statutory to a constitutional entity the people intended to limit legislative control over University affairs." 638 P.2d at 467. In Baker, the Board of Regentschallenged a joint resolution enacted by the Legislature whichdirected that all State agencies, including the Board of Regents,increase the salaries of all employees by six percent in thecoming fiscal year. Finding that the legislative establishment of employee raises impermissibly interfered with the Board of Regent's constitutional power over the University's general government, the Court stated:
 We believe the finding by the trial court that the Legislature may fix and determine the manner in which raises are to be given to employees of the Board of Regents was erroneous. The determination of salary schedules and the compensation to be paid to the employees of the Board of Regents is an integral part of the general government of the University.
Baker, 638 P.2d at 468 (emphasis added).
¶ 14 In reaching this conclusion, the Oklahoma Supreme Court quoted with approval from a 1975 Montana case, Board of Regentsof Higher Education v. Judge, 543 P.2d 1323 (Mont. 1975). One of the legislatively imposed limits in Judge was a statute which limited the salary increases for university system presidents and the commissioner of higher education. Finding that such limitations indicated "`a complete disregard for the Regents' constitutional power,"' the Judge court found that the Montana Constitution vested the board of regents with the power to determine priorities in higher education, and that one of the chief priorities is the hiring and keeping of competent personnel:
 Inherent in the constitutional provision granting the Regents their power is the realization that the Board of Regents is the competent body for determining priorities in higher education. An important priority is the hiring and keeping of competent personnel. The [statutory] limitation . . . specifically denies the Regents the power to function effectively by setting its own personnel policies and determining its own priorities. The condition is, therefore, unconstitutional.
Board of Regents of University of Oklahoma v. Baker,638 P.2d at 467 (quoting with approval from Judge, 543 P.2d at 1335) (emphasis added).
¶ 15 The Baker rationale is equally applicable to the provisions of Article XXVI, Section 1. The Director of the Oklahoma Department of Wildlife Conservation is, under that provision, to govern the Department. Thus, it is the Director, under the rules and regulations of the policies established by the Commission, who is to determine the salary of the Department employees, not the Legislature. Thus, the Director of the Oklahoma Department of Wildlife Conservation, in establishing salaries of that Department's employees, is not required to comply with the salary increase provisions of Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57, 4.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral, that:
 1. It was the intent of the Oklahoma Legislature, in enacting the mandatory salary increase provisions of Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57, 4, that all State agencies not specifically exempted, including the Oklahoma Department of Wildlife Conservation, comply with the provision's requirements.
 2. Under the provisions of Article XXVI, Section 3 of the Oklahoma Constitution, the Director of the Oklahoma Department of Wildlife Conservation is empowered to appoint such assistants and employees, as the Oklahoma Wildlife Conservation Commission may deem necessary. Additionally, that provision empowers the Commission to determine the qualifications of the Department's Director and all of the Department's assistants and employees.
 3. The legislatively-imposed mandatory salary increase provided for in Section 4 of Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57 directly affects the Oklahoma Wildlife Conservation Commission's ability to appoint the number of employees it deems necessary, because it requires the Commission to spend funds on salary increases making those funds unavailable to hire additional employees. Thus, the mandatory salary increase impermissibly encroaches upon the constitutionally-granted authority of the Oklahoma Wildlife Conservation Commission to determine the number of employees it wishes to hire.
 4. The Director of the Oklahoma Department of Wildlife Conservation, by virtue of Article XXVI, Section 1 of the Oklahoma Constitution, is vested with the power to govern the Oklahoma Department of Wildlife Conservation. This constitutionally vested power includes the power to determine the salary schedules and compensation to be paid Department employees.
 5. Legislatively-imposed salary increases, such as those required by Senate Bill 1128, 1996 Okla. Sess. Laws ch. 57, 4, impermissibly encroach upon the Director of the Oklahoma Department of Wildlife Conservation's power to govern the Department. Accordingly, the Director is not required to comply with that mandatory salary increase provision.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL